**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WENCESLAO BALDERA-BANCES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-983-J** |
| | ) | |
| **MARKWAYNE MULLIN et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Wenceslao Baldera-Bances, a noncitizen[1] and Peruvian national proceeding *pro se*, filed a Petition for Writ of Habeas Corpus filed a Petition for Writ of Habeas Corpus challenging his detention by U.S. Immigration and Customs Enforcement (ICE) under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge Bernard M. Jones II referred the case to the undersigned magistrate judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Respondents timely filed a Response. (ECF No. 7).

For the reasons below, the undersigned recommends the Petition be **GRANTED IN PART**, and that Respondents be ordered, within seven days, either to provide Petitioner with a bond hearing before an immigration judge under § 1226(a) or to release Petitioner.

---

[1] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. 1101(a)(3)).

## I. BACKGROUND AND PETITIONER'S CLAIMS

Petitioner is a native and citizen of Peru. (ECF No. 7-1:1). Petitioner entered the United States near Eagle Pass, Texas, on or about June 18, 2023. (ECF No. 7:1). A Customs and Border Protection (CBP) officer determined Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), which renders inadmissible any noncitizen who, at the time of application for admission, is not in possession of a valid unexpired visa or other entry document. (ECF Nos. 7-1:1 & 7-2:1). Based on that determination and Petitioner's status as an "arriving alien," CBP processed Petitioner for expedited removal. (ECF No. 7-2). After Petitioner expressed a fear of return to his country of origin, his case was referred to an asylum officer, who found that Petitioner had established a credible fear of persecution or torture. (ECF No. 7-1:1). ICE then initiated removal proceedings under Section 240 of the INA, 8 U.S.C. § 1229a, where Petitioner will have his asylum application adjudicated by an Immigration Judge. *See* ECF No. 7-1:1; 8 C.F.R. § 208.30(f).

On July 14, 2023, ICE released Petitioner from custody and paroled him into the United States under 8 U.S.C. § 1182(d)(5)(A). (ECF Nos. 7-3 & 7-4). The parole notice stated that the parole authorization would automatically terminate after a period of one year absent an extension. (ECF No. 7-4). Petitioner then lived in the interior of the United States for more than two and a half years. (ECF No. 7-7). On February 27, 2026, following a traffic stop, ICE arrested and detained Petitioner pursuant to a Form I-200 warrant. (ECF Nos. 7-5 & 7-6). Petitioner's removal proceedings under INA § 240 are pending, and

he remains detained at the Cimarron Correctional Facility in Cushing, Oklahoma. (ECF Nos. 1:1 & 7-8).[2]

The undersigned liberally construes[3] the Petition to raise the following grounds of relief: (1) Petitioner contends that ICE detained him in violation of the Fifth Amendment's Due Process Clause because Petitioner did not receive any notice or interview prior to his re-detention; (2) Petitioner argues that ICE violated the INA when ICE detained him "without an Arrest Warrant from the Attorney General;" and (3) Petitioner argues that he is detained under § 1226, and that ICE has violated the INA and applicable regulations by claiming that he is subject to mandatory detention and by failing to afford him an individualized bond hearing as § 1226 requires. (ECF No. 1:7-8). Petitioner asks the Court to order his release through an order of supervision, order a bond hearing, or another alternative. (ECF No. 1:9)

Respondents' position is that Petitioner remains subject to mandatory detention under § 1225(b)(1) and that he is not entitled to a bond hearing. *See* ECF No. 7:3-9. Respondents principally argue: (1) Petitioner is an "arriving alien" whose parole "shall not be regarded as an admission" and did not alter that status; (2) following the asylum officer's positive credible-fear finding, § 1225(b)(1)(B)(ii) provides that Petitioner "shall be detained" for further consideration of his asylum application; and (3) upon the

---

[2] *See* https://locator.ice.gov/odls/#/results (last checked July 10, 2026).

[3] "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court will not, however, provide a pro se litigant with arguments or act as his advocate. *Id.*

termination of his parole, § 1182(d)(5)(A) required that Petitioner be "returned to the custody from which he was paroled," restoring mandatory detention under § 1225. (ECF No. 7:3-6, 9).

## II. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III. LEGAL FRAMEWORK

### A. Detention Under § 1225 and § 1226

The parties' dispute can be reduced to a single legal question: whether Petitioner's current detention is governed by § 1225(b), under which detention is mandatory and no bond hearing is available, or by § 1226(a), under which a detained noncitizen is entitled to an individualized bond hearing. The two provisions occupy different domains. As the Supreme Court has explained, § 1225 "applies primarily to aliens seeking admission to the United States," while § 1226 "generally governs the process of arresting and detaining" noncitizens "pending [a decision on] whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (citation modified). In simpler terms, § 1225 generally applies at the border, and § 1226 applies in the interior

of the country. *See Santillan Quiroz v. Mullin*, --- F.4th ---, 2026 WL 1876709, at *4 (10th Cir. June 30, 2026).

**B. Provisions Governing Expedited Removal, Credible Fear Proceedings and Parole under § 1225(b)(1)**

Section § 1225(b)(1) supplies the expedited-removal process for certain noncitizens arriving in the United States. If an immigration officer determines that an arriving noncitizen is inadmissible under either 8 U.S.C. § 1182(a)(6)(C) related to attempting to procure entry through material fraud or misrepresentation, or § 1182 (a)(7) inadmissibility due to lacking a valid entry document, the removal and detention process unfolds on one of two tracks depending on if the noncitizen expresses a fear of returning to their country of origin. As summarized by one Court:

> If the noncitizen is inadmissible and does not indicate an intent to apply for asylum or express a fear of prosecution or torture or fear of returning to their country of origin, the officer issues a Notice and Order of Expedited Removal; the noncitizen may respond in a sworn statement, and once a supervising officer reviews and approves the determination of inadmissibility, the noncitizen is ordered removed.

*Coalition for Humane Immigrant Rights v. Noem*, No. 25-cv-00872, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025).

If, however, the noncitizen expresses an intent to apply for asylum or a fear of persecution, "the inspecting officer must refer the noncitizen for a 'credible fear interview' before a USCIS asylum officer." *Id.*; *see* 8 C.F.R. §§ 208.30(b), 235.3(b)(4). The asylum officer conducts that interview "either at a port of entry or such other place designated by the Attorney General." § 1225(b)(1)(B)(i). Alternatively, if "in exercising USCIS's

discretion, it is determined that circumstances so warrant, the asylum officer, after supervisory concurrence, may refer the alien for proceedings under section 240 of the Act . . . without making a credible fear determination." 8 C.F.R. § 208.30(b).

If the noncitizen is referred for a credible-fear interview and the asylum officer finds a credible fear of persecution or torture, USCIS has "complete discretion" either to issue a Notice to Appear "for full consideration of the asylum and withholding of removal claim in [s]ection 240 proceedings" or to "retain jurisdiction over the application for asylum." 8 C.F.R. § 208.30(f); *see Coalition*, 2025 WL 2192986, at *3. If USCIS retains jurisdiction, it "shall conduct" an asylum interview "within 45 days of the applicant being served with a positive credible fear determination." 8 C.F.R. § 208.9(a)(1). If, by contrast, the asylum officer makes a *negative* credible-fear determination, a different procedure ensues, involving review by a supervisory asylum officer and the availability of review by an immigration judge before the expedited-removal order becomes final. *Id.* § 208.30(e)(8), (g); *see* § 1225(b)(1)(B)(iii)(III).

Detention throughout this process is authorized by § 1225(b). The specific provisions Respondents invoke to justify Petitioner's "mandatory" detention are addressed in the analysis in Part IV.

At any point during this process, the noncitizen can be "paroled" into the United States under § 1182(d)(5)(A). Under that provision,

> [t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but

> such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of the Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

An "admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). An "applicant for admission" is any noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Because parole "shall not be regarded as an admission," a paroled noncitizen remains an "applicant for admission" despite authorized release into the United States. But being an "applicant for admission" is not the same as "arriving in the United States." A noncitizen who has entered and lives in the interior remains an applicant for admission until formally admitted, yet is no longer "arriving." The question here is therefore not whether Petitioner is an applicant for admission, which he is, but whether his detention falls under the border provisions of § 1225 or the interior provision of § 1226(a).

### C. Applicants for Admission and Arriving Aliens

Much of the recent litigation over detention authority and the border-versus-interior distinction has arisen under § 1225(b)(2)(A), which mandates the detention of "an applicant for admission" who "is seeking admission." In *Santillan Quiroz*, the Tenth Circuit issued its decision construing the applicability of § 1225(b)(2)(A) to noncitizens who entered the United States without inspection and were detained by ICE in the interior

of the country many years later. The Government argued that because the noncitizen remained an "applicant for admission" he must necessarily be "seeking admission," and so he was subject to mandatory detention under § 1225(b)(2)(A).

The court rejected that theory, holding that "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)." The court reasoned that "applicant for admission" and "seeking admission" are distinct statutory requirements; that a noncitizen already present in the country is "categorically unable to seek admission while [he] remain[s] in the country"; and that the post-entry filing of an application for relief such as asylum confers lawful status but does not render a noncitizen "seeking admission." *Santillan Quiroz*, 2026 WL 1876709, at *7.

The court, however, expressly declined to decide whether detention authority under § 1225(b)(1) reaches noncitizens detained in the interior, reserving the question in a footnote. *See Santillan Quiroz*, 2026 WL 1876709, at *14 n.6 (noting that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)," but that no such argument was presented).

Whether Petitioner's re-detention is governed by § 1225(b)(1)(A) despite his entry and continuous physical presence inside the United States is the question presented in the instant Petition. While *Santillan Quiroz* does not directly supply the answer, the court's logic remains instructive here.

## IV. ANALYSIS

### A. Petitioner Is Detained Under § 1226(a)

Petitioner's present detention is governed by § 1226(a), not § 1225(b). Petitioner entered the United States, was paroled under § 1182(d)(5)(A), lived in the interior for more than two and a half years, and was then arrested by ICE during a traffic stop in Oklahoma City, far from any port of entry and while his removal proceedings under section 240 remained pending. (ECF Nos. 7-4 & 7-5).

That detention "is not part of the inspection process, nor does it arise from an attempted entry at a port of entry." *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *2 (W.D. Okla. June 29, 2026). It is, instead, the detention of a noncitizen "already in the country" pending a decision on removal, the paradigm case for § 1226(a). *Jennings*, 583 U.S. at 288.

Respondents' own conduct reflects this understanding. When ICE arrested Petitioner, they did so pursuant to a Form I-200 Warrant for Arrest of Alien under sections 236 and 287 of the INA, that is, the § 1226 authority, rather than under § 1225. (ECF No. 7-6). Section 1225(b) "contains no warrant requirement," so the decision to secure and serve a § 1226 warrant "suggests that [ICE] understood [Petitioner] to be subject to discretionary rather than mandatory detention, since securing such a warrant was unnecessary if Respondents were actually detaining [him] under Section 1225(b)." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 311 (E.D.N.Y. 2025) (citation

modified). The manner of Petitioner's arrest thus confirms that his detention arises under § 1226(a).

**B. Petitioner is not an Arriving Alien Subject to § 1225(b)(1)**

Section 1225(b)(1)(A)(i) reaches a noncitizen "who is arriving in the United States." The verb "is arriving" describes a present, ongoing act, not a status that attaches once and endures indefinitely. A noncitizen "arrives" upon reaching the border or a port of entry; once admitted, paroled, or otherwise released into the interior, that noncitizen is no longer "arriving." *See Rafibaev v. Noem*, No. 26-CV-00461, 2026 WL 607559, at *3 (D. Colo. Mar. 4, 2026) ("someone arriving in the United States is someone who has reached the border or a port of entry," and "upon his parole into the interior of the country, petitioner had arrived in the United States and was no longer a noncitizen arriving in the United States") (citation modified).

Respondents contend that Petitioner remains an "arriving alien" subject to mandatory detention under § 1225(b)(1) because his parole "shall not be regarded as an admission" and, in their view, did not alter his status. Courts in this District and elsewhere have rejected that theory. As this Court has previously recognized, parole under 8 U.S.C. § 1182(d)(5)(A) does not, by itself, revert Petitioner's status back to that of an arriving alien. *See Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560 (W.D. Okla. Apr. 7, 2026). Numerous courts have likewise concluded that a noncitizen's detention does not necessarily revert to § 1225 upon termination of humanitarian parole. *See, e.g., Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2-3 (W.D. Okla. May 26, 2026);

*Salgado v. Francis*, No. 25-CV-6524 (VEC), 2026 WL 915304, at *4-6 (S.D.N.Y. Apr. 3, 2026); *Capote Zamora v. Mullin*, No. 26-CV-00538-PAB, 2026 WL 1026810, at *3 (D. Colo. Apr. 16, 2026) ("[R]egardless of whether petitioner was detained pursuant to § 1225(b)(1) or § 1225(b)(2) upon his initial entry into the United States, petitioner's detention did not revert back to § 1225 when his parole was terminated."); *see also Cunha v. Freden*, 175 F.4th 61, 85 (2d Cir. 2026) (rejecting broad reliance on the "entry fiction" doctrine in the detention context).

The growing consensus in this Court is that individuals who have been granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and are later detained by ICE within the United States are considered detained under 8 U.S.C. § 1226(a). *See Arevalo Castillo v. Figueroa*, No. CIV-26-162-HE, ECF No. 16 (W.D. Okla. July 7, 2026) (finding a petitioner whose humanitarian parole was terminated is entitled to an individualized bond hearing); *Ochilov v. Grant*, No. CIV-26-526-R, 2026 WL 1896139, at *1-2 (W.D. Okla. July 1, 2026) (rejecting "theory that Petitioner retains his status as an 'arriving' noncitizen subject to mandatory detention under § 1225(b)(1) irrespective of the fact that Petitioner was released and allowed to live in the country for several years" where the petitioner may have been "paroled under 8 U.S.C. § 1182(d)(5)(A)"); *Zhakhonov*, 2026 WL 1865418, at *2-3 (finding "that Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under § 1225(b)(1)" and that "Petitioner's present detention is governed by § 1226(a)"); *Drozdov*, 2026 WL 1470929, at *2 ("[R]evocation of parole under § 1182(d)(5) does not render a noncitizen in Petitioner's circumstances

subject to detention under § 1225(b)(1).”); *Kumar*, 2026 WL 937560, at *2 (rejecting theory that the termination of petitioner’s parole reverted his status to an ordinary applicant for admission under 8 U.S.C. § 1182(d)(5)(A)); *Kudusov v. Grant*, No. CIV-26-132-HE, ECF No. 13, at *3-4 (finding “‘noncitizens who remain in the United States after their [humanitarian] parole ended are not arriving aliens’” and “conclud[ing] that § 1226(a) governs petitioner’s detention, and thus, he is entitled to an individualized bond hearing”) (quoting *Quintero v. Olson*, No. 4:26-cv-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026)).

### C. Respondents’ Statutory Arguments Do Not Compel a Different Result

Respondents advance three textual arguments for treating Petitioner’s detention as mandatory under § 1225(b)(1). However, the undersigned finds these arguments unpersuasive.

First, Respondents contend that Petitioner remains subject to the expedited-removal and mandatory-detention regime of § 1225(b)(1) itself. That regime, however, reaches only a defined class. By its terms, § 1225(b)(1)(A)(i) applies to an inadmissible noncitizen who is either “arriving in the United States” or “described in clause (iii).” Clause (iii)(II), in turn, reaches only a noncitizen “who has not been admitted or paroled into the United States” *and* who lacks two years’ continuous physical presence. § 1225(b)(1)(A)(iii)(II).

Petitioner satisfies neither category. As discussed above, a noncitizen who entered years ago and now lives in the interior is not “arriving.” Nor is Petitioner “described in

clause (iii)." Petitioner was paroled into the United States, and he has been physically present in the country for more than two years. Because Petitioner falls outside both prongs of the gateway, the expedited-removal provisions of § 1225(b)(1), including their mandatory-detention command, can no longer apply to him. *See Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at *3, *8 (S.D.N.Y. Dec. 17, 2025).

Second, Respondents contend that § 1182(d)(5)(A) requires that, upon the termination of parole, Petitioner be "returned to the custody from which he was paroled," so that he must now be treated as though he had never been paroled. That reading is untenable. The provision does not state that a noncitizen reverts to "arriving alien" status or that his detention becomes mandatory; it provides only that the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission." § 1182(d)(5)(A). Section 1182(d)(5)(A) is not a detention authority at all, for it "does not 'affirmatively authoriz[e] detention.'" *Qasemi*, 2025 WL 3654098, at *10 (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). Courts have accordingly held that "the expiration of . . . parole does not require treating the noncitizen as if they had never been paroled in the first place." *Jean Baptiste v. Bondi*, No. CV 26-02586, 2026 WL 1684433, at *6 (D. Ariz. May 21, 2026) (citation modified). Reading the "return to custody" clause to compel mandatory detention would transform a humanitarian release mechanism into a trap, returning a long-resident parolee to a detention posture he never occupied while at liberty in the interior.

Third, Respondents rely on § 1225(b)(1)(B)(ii), which provides that, following a positive credible-fear finding, "the alien shall be detained for further consideration of the application for asylum." That command governs the interim period of the expedited-removal process. It does not perpetually govern a noncitizen's detention posture after he has been paroled into the interior and placed in full section 240 proceedings. As explained above, the positive credible-fear finding removed Petitioner from the expedited-removal track and placed him in section 240 proceedings, *see* 8 C.F.R. § 208.30(f), after which DHS exercised its discretion to parole him into the interior. *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 305-306 (E.D.N.Y. 2025) (explaining that when DHS paroles a noncitizen into the interior, "it made the determination that it no longer intend[ed] to fast-track [his] removal and that it [would] proceed with the standard removal process under 8 U.S.C. § 1229a") (citation modified). Petitioner's present detention, effected years later on a § 1226 warrant during ongoing section 240 proceedings, does not resurrect the credible-fear posture that § 1225(b)(1)(B)(ii) addresses. (ECF Nos. 7-6 & 7-8).

### D. Respondents Violated Petitioner's Statutory Right to a Bond Hearing and a Bond Hearing Is the Appropriate Remedy

Because Petitioner is detained under § 1226(a), the governing statute and regulation entitle him to an individualized bond hearing. Section 1226(a) authorizes release on bond, 8 U.S.C. § 1226(a)(2), and the implementing regulation provides that such a detainee "may . . . request a custody redetermination" and be released on bond by an immigration judge, 8 C.F.R. § 236.1(d)(1). *See Jennings*, 583 U.S. at 306 ("Federal

regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). Respondents have detained Petitioner without affording him the bond hearing that § 1226(a) and § 236.1(d) require. Petitioner's detention therefore violates the laws of the United States, and Petitioner is entitled to habeas relief. 28 U.S.C. § 2241(c)(3); *see Santillan Quiroz*, 2026 WL 1876709, at *5 ("[N]oncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond).").

A bond hearing is the appropriate remedy. *See Santillan Quiroz*, 2026 WL 1876709, at *17 n.13 (directing that the Government, within seven days, either provide a bond hearing or release the petitioner); *Ochilov*, 2026 WL 1896139, at *2 (directing a custody hearing within seven days). Because Petitioner is entitled to relief on this statutory and regulatory ground, the Court need not reach his separate constitutional claim. *See Aitiev v. Gantt*, No. CIV-26-997-R, 2026 WL 1894795, at *6 (W.D. Okla. July 1, 2026) (declining to reach remaining claims where the petitioner was entitled to relief on another ground).

## V. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **July 22, 2026**. If a party wishes to respond to the other party's objections, such response must be filed not later than **July 27, 2026**. *See id*. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**VI. STATUS OF REFERRAL**

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on July 15, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE